Please all rise. Here ye, here ye, Mr. Honorable Petitfort of the 2nd Judicial District is now back in session. The Honorable Liam C. Brennan is presiding. Please be seated. Your Honor, the second case on the docket this morning is 2-29-0389. The Honorable School District Agency plaintiff appellee, cross-appellant. The Board of Education of East Aurora School District 131. Ms. Carla Garza, defendant appellee and cross-appellee. Argument for the appellant, cross-appellant, is Paulette K. Petretti. Argument for the appellant, cross-appellant, is her not the right to comment. Both sides ready to proceed? Ms. Petretti, you may proceed. Good morning. May it please the Court. My name is Paulette Petretti, appearing on behalf of the Board of Education of East Aurora School District 131 and Dr. Twyla Garza. The Court should reverse the underlying trial court's decision because the ruling improperly deprives the appellants of insurance coverage. This is a declaratory judgment action concerning insurance coverage for lawsuits filed in 2018 and 2019 against the Board of Education and Dr. Garza, who served as the principal of Bardwell Elementary School. The lawsuits allege the defendants engaged in willful and wanton hiring, retention, and supervision of an employee who allegedly sexually abused the minor Doe plaintiffs in the underlying lawsuits. Mr. Dreeben, if I could ask a special question to clarify the scope of your argument. Besides arguing the trial court erred in interpreting the contract and determining that the ISD did not owe a duty to defend, you have also now in appeal raised the issue of whether there was coverage under the umbrella portion of the policy, correct? Under the what? Umbrella portion of the policy. Yes, Your Honor. Okay. Did you raise that issue before the trial court? We have always included the umbrella policy in response to the answer in the motion for judgment on the pleadings and also in the motion for summary judgment. Did the trial court address that specific issue in rule ending? No, they did not. Okay. And there's a potential problem, we realize, with a forfeiture of a waiver. Case law, Supreme Court rule, arguments not made before the trial court are way ahead of appeal. I understand, Your Honor. Okay. I just wanted to mention that. Yes. The alleged misconduct at issue here took place during the 2014 and 2015 school year. And at that time, a multi-parole insurance policy was in place. The policy was sold to the school district by the plaintiff, Illinois School District Agency. The defendants tendered the lawsuits to ISDA in a timely fashion for defense and indemnification under the commercial general liability coverage part. How long after they were notified did they notify the insurance company? Actually, the school district notified the insurance company when the underlying perpetrator was arrested in March of 2018. How long was that after it was reported to the school district of this abuse? Back in 2014. So about four years later. Yes, but I think it's important to address what occurred. When it was reported in 2014, the principal notified the Department of Children and Family Services. And they undertook an investigation, and it came back unfounded. And the Aurora Police Department, as well as the state's attorney and the Child Advocacy Center all dropped the case as of early 2015. And under the law, the Illinois Personnel Records Review Act, the school district had to expunge any reference to the unfounded report. Does that mean that they cannot inform their insurance carrier to just make sure they don't run afoul of these limitations in terms of notice? The not reporting, I think it's more of an ethical, since they are prohibited from basically raising this because it was unfounded and it was determined that the claims were not credible. There was no claim to report to the insurance company at that time. Is there a difference between the CGL portion of reporting and the sexual abuse portion of reporting? Yes, there is, Your Honor. The CGL is an occurrence policy. And so that will be triggered if there is an occurrence happening during the policy. The sexual abuse coverage part is a claims-made policy. And that had to be reported during the policy or, I believe, 60 days after the expiration of the policy. But the definition of the sexual abuse under the sexual abuse coverage part is that it is a claim that is seeking money damages or there is a filing of a criminal complaint. In 2014, neither of those requirements were satisfied because there was no request for money damages. In 2014, there was no claim against the school district at all. There was no suggestion that there was a failure to negligently hire or retain or supervise. And there were no criminal charges. So those two aspects of the definition of sexual abuse were not satisfied. And so there was no claim to report at that time. Even if you didn't violate that portion of the policy, doesn't the policy say that a cause of action in connection with a claim of sexual abuse is excluded? Yes, but that exclusion, which is under the CGL policy, is very broad. That language, in connection with, has been deemed to be ambiguous by Illinois courts. It is vast and it's unspecified. Are you saying it's against public policy? Against public policy to have this wording in an insurance policy. We have not argued that it was against public policy, but we're saying that the language itself is ambiguous. And also when you read that language in conjunction with the exclusions under the Safer Schools Coverage Act, which is another section under the CGL policy, that sexual abuse provision and exclusion specifically states it excludes someone who is engaged in sexual molestation or abuse and it also excludes any negligent hiring, retention or supervision. It's very specific. So the policymaker knew how to exclude that coverage if it wanted to. Precisely. So that is in there, and that is in the same section. It's in the CGL provision of the policy. The other reason that we, the school district maintains that the CGL policy is relevant is because that policy covers bodily injury and it specifically covers the negligence actions, the duty to exercise ordinary and reasonable care. And in this case by the school district. Yes. And in this case, the allegations in the underlying complaint specifically allege against the school district that the school district and Dr. Garza, the principal, did not willfully and wantonly engage in improper and negligent hiring. So you're saying that the allegations against Mr. Avendano and the school district are independent of each other? Yes, Your Honor. We are saying that. Based on what? Well, the allegations against Mr. Avendano are for intentional acts of sexual abuse, of assault and battery. The allegations against the school district and the principal are allegations of willful and wanton negligent hiring, retention and supervision. They are vastly different, and Illinois law does address that. It has, in fact, the second district has addressed that on several occasions recently. In the West Bend case, which was recent, the court went into great detail about the distinctions in a willful and wanton case. Also, the independent review of coverage is well established in Illinois that, particularly under this policy, each insurer, each member, is entitled to distinct and independent analysis of coverage. So the school district is a member, Dr. Garza is a member, and Mr. Avendano is a member, because they are all employees and the insuring body. But each one of those, under the policy, is entitled to an analysis as if he or it or she were the only insured. So I think you have to look at this case and take out Avendano completely and say, this could have been filed solely against the school district for willful and wanton hiring, retention and supervision. And that clearly comes within the four corners of the analysis here. Under the policy, which covers bodily injury and which covers the failure to exercise proper care, there are ñ I mean, clearly, the insuring agreement provides coverage. The ñ I want to ask a question. So the ambiguity that you're asking us to find, is this ñ is the ambiguity ñ because in connection with the sexual abuse claim, to paraphrase, it doesn't necessarily seem that ambiguous to me. The ambiguity seems to be you're looking at these other provisions and saying because of what we're seeing there, reading the policy as a whole, it's ambiguous. Am I correct that that's where the ambiguity is created, not the language itself in connection with this? Well, I think it's sort of two-pronged. I think, yes, looking at the policy as a whole, when you have the Safer Schools Coverage Act spelling out the fact that negligent hiring, supervision, and retention are excluded, it's clear, as you mentioned, Your Honor, that the insurer knew how to write that. So that's a big distinction. But also, the language of the exclusion itself, which uses that in connection with its sexual misconduct and ñ excuse me while I ñ sexual abuse and sexual abuse means ñ I'm sorry, Your Honor. The sexual abuse means any actual attempted or alleged conduct or course of conduct of a person or more than one person acting in concert which causes physical and or mental injuries to another person from sexual molestation, sexual assault or sexual exploitation. It very specifically excludes that conduct. But it ñ the definition doesn't exclude coverage for injuries caused by negligent employment, training or supervision. It's very specific in the conduct that it is talking about. And if ISDA had intended to exclude those injuries, they could have spelled it out in that language. I mean, clearly, within the same policy, they spell it out in another provision. And that is spelled out very, very clearly. The other interesting thing is under the umbrella policy, there is no exclusion for sexual misconduct at all. And I did bring that up because it is relevant to the fact that if there would be no coverage under the CGL policy underlying, then there could be coverage under the umbrella policy. And that is something that when an insurance policy is tendered to an insurer, they do have an obligation to look at all aspects of the policy, not just the ñ the insurer ñ the insured does not always know where to direct the insurer. I mean, it is the insurer's responsibility. So that is something that the ñ the insurer should have reviewed as well. Now, the other ñ Of course, the exclusion is in a very large, bold, capitalized, you know, letter, so that no one is going to ignore that portion of the insurance policy. Well, the exclusion ñ but I mean, the exclusion for sexual ñ sexual abuse is just one of many exclusions. It's not any bolder, I don't think, than anything else. It's ñ it's one of the exclusions listed. The other analysis that the Illinois courts have engaged in with regard to cases that involve exclusions are looking at the causes of action themselves, as in Skolnick v. Allied Property and Casualty Insurance, where the ñ there was a homeowner's policy, a ñ the son of the homeowners delivered a drug, methadone, to a woman who died at the house. And there was an exclusion for ñ Your Honors, my time is up. You will certainly have additional opportunities to speak to us in the course of the morning. Thank you. All right. I'm sorry. Any other questions? No. All right. Thank you. Thank you, Your Honor. Mr. Chacon. May it please the Court? My name is Zach Chacon, and I represent the Illinois School District Agency. Mr. Chacon, does the policy here focus on allegations of negligent hiring and not exclusion? Well, I think as Judge Brennan pointed out, the policy very specifically, the CGL part of the policy, very specifically excludes any cause of action in connection   negligent supervision that results in sexual abuse is in connection with sexual abuse. I think I'd have to direct the Court's attention to Pruitt, which this Court relied upon in the Smiley decision, which does provide, I think, essential guidance in determining whether or not a cause of action that is ostensibly covered is actually wholly independent from a cause of action that's excluded under the policy. In that case, the courts will undoubtedly recall a father was sued for negligent supervision of a son who was riding a motorbike and ran into a person and injured that person. The father was sued for negligent supervision. The son was sued for his own negligence in operating the bike. There was an exclusion for motor vehicles in that policy. And the First District determined in that case that because there could be no negligent supervision cause of action against the father without some negligence, some wrongful conduct on the part of the son, the two causes of actions were not wholly independent and, therefore, the cause of action for negligent supervision against the father is excluded. But that's oversimplified. Are you saying in so many words that if Mr. Evendando had been accused of sexual abuse, they would be in the case at all? Exactly. There would be no case for negligent supervision, for negligent hiring, for negligent anything against the school district but for the sexual misconduct of Mr. Evendando. But there are situations wherein it could be a negligent hiring, negligent supervision, and it wasn't sexual. Well, what the Court is saying is that there might be situations where there is a cause of action for negligent supervision that is somehow, I'm not sure I can think of one in the context of sexual abuse, but another context I can envision or at least imagine a cause of action against one party for negligent supervision and another cause of action for strict negligence. And in that circumstance, I can envision that there could be a conclusion that they're not wholly independent or that they are dependent upon one another. But here I think it's very important to remember that even though the Board of Education, knowing of the accusations against Mr. Evendando, knowing of his propensity for committing this sort of conduct, didn't do anything for over three years and did not actually do anything until March of 2018 when he was arrested. These reports, as Judge Shostak pointed out, were in 2014. In fact, that's not true. Let me restate that. The Jane Doe sexual abuse occurred in 2014. The sexual abuse for Mary Doe accused in 2016, well after the policy term expired. So there would be no coverage under an occurrence-based policy or a claim-to-mate policy with regard to the 2016 allegation against Mr. Evendando. But my point here is that these are allegations that but for the conduct of the Board of Education and Ms. Garza, the abuse would not have happened. The abuse would not have continued. Under those circumstances, the wholly independent analysis that's required by the Illinois Supreme Court in the Northbrook case, that's required by this district in Pruitt, simply does not produce a result that calls for coverage under the CJA case. So you're acknowledging that conceptually there could be cases where the allegations would be wholly independent. This just isn't the case. I'm acknowledging that there could be. I will confess to Your Honor that I cannot imagine a situation where there's an allegation of sexual abuse by a teacher. Not sexual abuse. Something else. Something else. I could probably imagine something. But sexual abuse is a very difficult situation. It's sort of a unique situation because it produces these sorts of circumstances. And there's a specific exclusion. Here there is a specific exclusion in the CGL coverage part. Judge Bush determined, and I wanted to make sure that this was very clear, he determined and identified only two parts of this plan of coverage policy that were actually implicated by the circumstances and the allegations of the underlying cases. And those were the CGL coverage part and the sexual abuse coverage part. And without getting into very much detail about that because it appears that the courts have actually reviewed the facts, with regard to the sexual abuse coverage part, there simply was no report until after the sexual abuse coverage part reporting period had long expired. It had to be reported within 60 days of the end of the period of coverage, which was in 2015. It wasn't reported until March of 2018. Well, what's your response to the argument from the school district that this was unfounded? And so if it's unfounded and they go ahead and report it, isn't that basically slandering? Well, I don't think they have to report that we know. I don't think they have to accuse Mr. Ogundala of anything. All they have to do under the sexual abuse coverage part, and let me just turn to that if I can, two events have to occur. They have to be aware of the sexual abuse occurrence during the period of the policy. And the second is, and that did not occur here, they were evidently, by their own admission, not aware until after the policy expired. But more importantly, the member has to report a sexual abuse occurrence. They don't have to report a claim. There doesn't have to be a claim. They can also report a claim, but a sexual abuse occurrence has to be reported within the period of the – within 60 days after the period of the policy. And the third is that a sexual abuse is not just defined as actual definitive sexual abuse. Sexual abuse means any actual attempted or alleged conduct. So it is not simply the actual final determination, excuse me, that Mr. Ogundala actually committed abuse, which I don't think – Just alleged. It has to be alleged counts. That's the whole point of a claims-made policy is that maybe a little bit less, but correspondingly, so long as they report that during the policy period or during the reporting period, there's coverage. And in fact – But in this case, you allege there is a coverage. Not under the sexual abuse coverage plan. Even if it were reported timely. Not under the sexual abuse coverage plan. And that's why it's important to make sure that that binary understanding that Judge Bush intuited is clear. The sexual abuse coverage part – I don't want to make a representation that it definitively would have been provided coverage, but Judge Bush determined that that would have been the actual part that should have responded to the claims that were being presented against the Board of Education in Garza. Unfortunately, based on the allegations and the underlying causes of action, BOE and Garza did not undertake any steps, not only with regard to Mr. Ogundala, but also to report the allegations that were being made to Mr. Ogundala. So, unfortunately, they lost that ability to obtain coverage under the very coverage part that was designed to provide coverage for these kinds of losses. So now they're trying to shoehorn this case into the CGL coverage part, which expressly excludes sexual abuse claims. And I want to point out, it's not just sexual abuse claims that are specifically and expressly excluded under the CGL coverage part. There's an additional exclusion that we've pointed out repeatedly and that has never been addressed by BOE and Garza, and that's the exclusion R in the policy, which states this coverage does not apply to any claim for damages, whether direct or consequential, any loss, cost, or expense, or any cause of action which is covered under any other coverage of this plan of to the sexual abuse coverage set forth in Part 3B. The insurance company went out of its way to make it abundantly clear that the only part of this policy that was going to be responding to any claims of sexual abuse was the claims made sexual abuse coverage part. They failed to comply with the conditions of the policy that would have provided coverage under that part. Unfortunately, very unfortunately, the CGL coverage part specifically is designed and written not to respond to claims of sexual abuse. Yes, it's broad. In Connection With is very broad. I have not seen any case, notwithstanding counsel's representation, that has held that In Connection With is ambiguous, and I agree with Justice Brennan that it doesn't seem ambiguous to me. In Connection With is deliberately broad, and it's deliberately broad for a reason. It's broad because the intent of the insurance company in this case was to make it And they did that by interposing two exclusions with the intent to make that clear. So I don't see that there's any basis for determining, for ruling in this case in any way that's different than how the court has ruled in Pruitt, than how this court ruled in Smiley, that there simply would not be a cause of action against the Board of Education and Ms. Garza without the conduct, the alleged conduct of Mr. Avendano, and those two allegations are not wholly independent. Is there any argument you would entertain that the duty to defend might persist notwithstanding these arguments that there's no obligation to identify? Duty to defend is clearly broader than the duty to identify. We acknowledge that. However, there's the corresponding rule that where the allegations in the underlying complaint state facts that under no circumstances could be regarded as covered under the policy, no duty to defend is triggered. Here, the allegations against BOA, Garza, and Mr. Avendano all arise or are in connection with Mr. Avendano's sexual abuse. Are you aware of any cases in a multi-parallel policy where there is a distinction between no coverage for the intentional tort-feasor issue, but will allow coverage for an exit hiring? Any case. That's not a trick question. The most recent case that I can recollect is the case that was brought up by BOE's counsel, and I believe that that is the West Bend case. The West Bend case, which was decided in 2021, though, involved not a policy exclusion, but actually an endorsement that provided sexual abuse coverage, just like the sexual abuse coverage part here. The thing that distinguishes that case from this case is that there the endorsement specifically provided coverage, and I would argue that ostensibly the sexual abuse coverage part here also would have provided coverage for negligent employment and investigation and supervision. It was explicit in that particular coverage part there. The question in that case was whether the allegations of willful and wanton misconduct in the underlying litigation qualified as negligence, and the court examined the pleadings and determined that the actual allegations, notwithstanding the buzzwords of willful and wanton misconduct, qualified as negligence, and therefore it was covered under that form. But in answer to your specific question, I can't think of a situation, as I'm standing here before you, Your Honor, that qualifies and answers that particular request. So if you have a duty under court law, you have a duty to defend, but then you write that duty out in the insurance policy, is that against public policy? I don't think so, Your Honor. I think we are, any insurance company, any individual, any company, is entitled to draft whatever contract the other side is willing to agree to. I think the limitations on that are that you have to draft a clear contract, that it has to be unambiguous, and that it can't be contrary to public policy. There is no public policy that I'm aware of that says that a CGL policy has to cover everything without exclusions and has to supply a defense obligation, irrespective of whether or not the underlying allegations are within a particular exclusion. This policy was written, as all policies are written, with specific exclusions, two of which, unfortunately, have the result for B.O.E. Garza of denying them any defense obligation or denying any defense to them with regard to the underlying litigation. I did want to address the umbrella policy very briefly. The umbrella policy was raised for the first time on appeal. Counsel has said that she included the umbrella policy. What she said in her brief was that it was actually an exhibit to the motion for judgment on the pleadings. The umbrella policy is a part of the plan of coverage, so it would have been unusual to exhibit everything else on the plan of coverage and not the umbrella policy. If it were properly argued, would you agree that the umbrella policy would afford coverage? No, Your Honor. The umbrella policy is what's called a follow-form policy. The specific – if you'll just give me a moment so that I do not speak out of turn. The specific coverage agreement is that coverage is afforded under the umbrella policy for damages, costs, expenses, to which coverage under the underlying schedule of insurance applies. So they have to be read together, basically. They have to be read together. Not only that, there's a specific exclusion in the umbrella coverage that says that if something's excluded under one of the underlying coverages, it's not covered by the umbrella policy. So, no, I do not believe that the umbrella policy – That's irrelevant because your position is relevant. Here's how it worked mechanically. I mean, if in fact they provided the proper notice, the appropriate notice under the claims-made coverage, all other things being equal and no other exclusions or strange facts having popped up, coverage would presumably have been available, let's say, for one of a better order than that. Right, but we don't have that situation here. We don't have that situation. Because we have an exclusionary policy. Only the CGL policy is left. And counsel has conceded that she's not making a claim under the sexual abuse coverage part. She can't. It was not properly reported. So the only coverage that she's trying to apply here is the CGL coverage part, which is subject to the express exclusions for claims and causes of action in connection with sexual abuse and for causes of actions that are covered under a separate coverage part. If they had done all this, perhaps the umbrella policy could have been implicated because then we wouldn't have an exclusive loss because then we would be focusing on the sexual abuse coverage part, which does not exclude sexual abuse. But that's not the case. That's not the case here. That's not the case here. But there are policies that are written that do not exclude sexual assault. Older policies, probably. Some of the earlier policies do. My understanding, and I guess I don't think there's anything of record here, but my understanding is that the insurance industry elected, once this became an issue, an ongoing issue, to supply that coverage in endorsements or in separate parts of policies while excluding it under the CGL policy, usually providing that coverage subject to limitations. But nevertheless, that's been the way that the policies and the way that Judge Bush intuited this policy is actually mechanically organized to provide coverage for these kinds of claims under one part but not provide them under the CGL coverage part. The safer schools, I always get this wrong, the SSCE, let's call it that, this is the portion of the policy that counsel raised that has its own sexual abuse exclusion that explicitly does mention negligent supervision. Judge Brennan pointed out that that shows that the insurance company knew how to exclude negligent supervision. And I agree that there is an express exclusion in the sexual abuse exclusion to the SSCE for negligent supervision. But I think the important point is that that specific reference is not required in the sexual abuse exclusion in the CGL coverage part because of its breadth. Precisely because of its breadth. You don't have to specify the cause of action of negligent supervision if you are excluding any cause of action in connection with sexual abuse. That would include a cause of action for negligent supervision. And so it's precisely for that reason that there aren't specific all potential causes of action that could flow from sexual abuse mentioned in the sexual abuse exclusion. Another point that I think is very important to make is that it's Illinois law that you can't use a completely unimplicated separate part of the policy to create an ambiguity in an implicated part of the policy. And I cited the case law to that effect in our brief. And that's what counsel is trying to do. She's trying to use a part of the policy that contains a provision that eliminates all the exclusions that are contained in the CGL coverage part and interposes their own exclusions because they're dealing with an entirely different type of circumstance. The SSCE is designed to deal with school shootings, essentially. That's not our situation here. And, of course, an insurance company would want to be sure that the exclusions in connection with coverage that's provided by time is done. Thank you, Your Honor. Thanks for your attention. Any additional questions? Yes. Mr. Chacon, thank you. You'll have another opportunity to address us. I appreciate it. Thank you, Judge. Thank you, Justice. Excuse me. I do have to cross the floor. I need to get to that. But I'll address it my next chance. Thank you, Your Honors. First, I just wanted to mention, counsel said that the school district didn't do anything in 2014. That just is not true. I mean, the record shows that it was reported to the DCFS and all of the other governmental agencies who are vested with the responsibility to investigate this kind of thing. But never reported to the insurance company. That's right, Your Honor. But going back to the sexual abuse coverage part, that coverage part does not apply to the school district and Dr. Garza. In the insuring agreement, it specifically says that one of the requirements, the two events that have to occur is the member first becomes aware of a sexual abuse occurrence that could give rise to a claim or an actual claim that has been made against the member. And this is very important because the member is the school district and Dr. Garza. And there was no claim against any, even a suggestion of a claim against the school district or Dr. Garza until 2018 when they reported it. And the claim would have been the negligent, hiring negligent supervision. That's right. But there has never been a claim of any sexual abuse or sexual occurrence against the school district or Dr. Garza. That is not a claim. And under the sexual abuse coverage part, it specifically defines a claim as means a demand for money damages or the filing of criminal charges arising out of a sexual abuse occurrence as defined, including service of a suit. There were no claims for money damages in 2014, and there was no filing of any criminal actions against anybody. The criminal actions were not filed against Avondale until 2018. So that coverage part does not apply to the school district and Dr. Garza. And under Illinois law, there is a lot of Illinois law. I was surprised that counsel couldn't invoke some of the cases that are out there that distinguish between intentional conduct and willful and wanton. American Family Mutual Insurance v. Enright. This was a situation where a company who produced ultrasounds, one of the employees was charged with sexual abuse during the course of doing an ultrasound. The claim was for sexual abuse against the employee, for negligent hiring and retention against the company. And the court said they were required to an independent analysis and they had coverage for willful and wanton supervision and hiring. The case that was out of the federal courts, U.S. Fidelity and Guarantee Company v. Open Sesame Child Care Center, the same scenario where an employee was charged with sexual abuse and the daycare center was charged with willful and wanton. And the court went into a very long analysis that the tort of a negligent hiring is well recognized in Illinois, is brought against an employer for its negligent hiring of an employee who intentionally injures a third party. But in assessing those claims, it's erroneous to refuse to separate the employer's alleged negligence from the employee's intentional conduct. And the court went on to say to do so would wrongfully ignore the employer's independent acts, which give rise to the alleged tort. The West End case, which we've talked about, the Contreras case, that was the Jasmine Daycare Center. That was another second district case where the husband of the owner was charged with sexual abuse. And this court said the daycare center and the owner were charged with willful and wanton conduct and they had coverage under the policy. But that case didn't have an exclusion for sexual assault or sexual abuse, did it? Your Honor, I can't answer that question. Because I don't know. Because I know I was on that panel. Yeah, I don't know. But once again, the exclusion, as we've stated, is overbroad and it excludes sexual conduct. But I understand where you're going. But if an insurance company wants to write a policy to exclude, the way you're arguing it, how would they be able to ever exclude sexual assault or the responsibility of the school? Would they have to write in that also they're excluding the negligent hiring? That's what they did under the Safer Sex Coverage Act. That's what they did. And if, as counsel says, well, under the CGL, this broad language does the trick, why didn't they use that language under the Safer Sex Coverage Act? You know, they took pains to spell it out. So I don't buy that argument that, you know, well, this is so broad it does the trick. That doesn't fly as far as I'm concerned. The Skolnick case also, I was talking about that before, the case where the son had methadone and the parents were charged with willful and wanton conduct because they knew he had methadone. But the important thing, I think, about that case is that they talk about proximate cause. And what they analyze is that if there is more than one proximate cause, then the court has to analyze that separately in terms of coverage. And that's the case really here because what even counsel is saying, you know, but for the negligent hiring this would never have happened, and then there's the intentional conduct that is alleged against Abandano. So there is more than one proximate cause. And in this case, what they say is that unless the exclusion that you're invoking completely eradicates all proximate causes, then it really doesn't apply. So, I mean, in this case, the exclusion is very focused on sexual misconduct, but it does not take in the negligent hiring retention and supervision. So I think the Illinois courts have really addressed this issue quite extensively in the cases that I just mentioned, Skolnick, Contreras, Enright, and the West Bend case. And it's clear that the courts are saying each insured should have a fair shot at coverage. And that's really what the school district is saying here. Look, we did what we had to do here, and that coverage part doesn't cover us. We're being charged now with Willful and Wanton hiring and retention, and that should be covered under the policy. We had no reason to believe that it wouldn't be covered under the policy. And how do you rebut his argument about the wording that an occurrence, that you should have reported an occurrence, didn't have to be a conviction, it didn't have to be a charge, but it was an occurrence? Well, it says, I just read, the following two events occur during the – this is what has to be – it's defining. Okay. The sexual abuse, I'm going back, subject to the plan, a claim first made against the member arising out of sexual abuse to which this coverage applies, provided that, here's the provision, the sexual abuse takes place after the prior occurrence date and before the expiration of the plan, and the following two events occur during the plan of coverage. The member first becomes aware of a sexual abuse occurrence that could give rise to a claim or actual claim that has been made against the member. That's what I said. So there – it has to be made against the member. And the school district. Yes. But all three are members, right? The teacher's a member, too. The teacher's a member, but you have to view it. Can you parse out which member, when they had notice and could have reported it? It has been made against the member. They're talking about if you have to make a claim. And then they say the member has reported the sexual abuse occurrence in accordance with the reporting requirements. So it has to be against the member is our position that it would be. My time is up, Your Honor. Does either side have any additional – or either judge have any additional questions? All right. Ms. Petretti, thank you. Thank you, Your Honor. Mr. Chabot. First of all, to address the last thing that was before the Court, the policy, I think preliminarily we should discuss what the Sexual Abuse Coverage Part provides, and that in the insurance agreement states that my client will pay those sums that the member becomes legally obligated to pay as damages because of a claim first made against the member during the plan of coverage arising out of sexual abuse to which this coverage applies. Who's the member? The member includes Mr. Avendano, anyone who is an insured, an identified insured, or an employee of an insured, or one of the teachers. I don't think that it makes sense to parse it out as to separate members. A claim was made against a member, and if they wanted coverage under the claims made coverage part of the plan of coverage, it needed to be reported within 60 days after the conclusion of that plan. Counsel read only the first requirement regarding reporting, and that is the reference to a claim. The second requirement is that the member has reported a sexual abuse occurrence no later than 60 days after the end of the plan of coverage. I don't think there's any question, number one, that the Sexual Abuse Coverage Part would have at least afforded the possibility of coverage for these events had it been proper, and also that there's no coverage, unfortunately, because the conditions necessary to meet the claims made requirements of that form were not met. I said that, counsel said that I said that the district did nothing. I want to make very clear that when I say something that the district did, I'm referring to the allegations of the underlying complaint. Those are the matters that are of record. Those are the matters that need to be focused on in determining whether there's a defense obligation. Extraneous facts as to what they might have done elsewhere with regard to this particular claim cannot be considered by this court, and were not considered in the court below in any event. What was before the court was before Judge Bush and was before the court here are the underlying allegations, and the underlying allegations is the district did nothing even after they became aware of the sexual abuse here. Counsel wanted to point out a bunch of cases where intentional conduct was somehow distinguished from willful and wanton conduct. My response to that is that there's no requirement of proof of intentional conduct in order for the exclusion that we're talking about to apply. It's a claim of sexual abuse. It's an occurrence of sexual abuse, which means an allegation of sexual abuse. It doesn't require that we establish that the Board of Education is some sort of intentional wrongdoer in order to assert the threat of that exclusion. So the cases that counsel cited that focus on the innocent co-insured doctrine or the innocent insured doctrine, that's the Contreras case primarily, but she also made that argument throughout, simply don't apply. All of those cases were addressing expected or intended exclusions and the breadth of those exclusions or intentional acts exclusions and the breadth of those exclusions. We're not talking about either of those types of exclusions. There is no innocent insured here that can make an argument that somehow they should be outside of the sexual abuse exclusion because the sexual abuse exclusion doesn't require their intent in order for it to apply. Are we ending your cross-appeal? Let me go on to that, Your Honor. I probably should do that. Judge Bush also determined that, in fact, the underlying allegations stated an occurrence. Can I ask you a funny question about the propriety of the cross-appeal? Sure. If I understand it, Judge Bush granted you all the relief you had asked for, who held you did not have the duty to defend or identify the defendants. Weren't you effectively granted all the relief that you requested by the trial court? I can't disagree with you on that, Your Honor. That is accurate. I don't want to short-circuit this, but I think the caseload on it says it obviates the necessity for us to entertain the cross-appeal. Well, that may be so, Your Honor. You may be correct. I don't think that it advances our position anymore, as you pointed out, but we filed the cross-appeals strictly out of an abundance of caution so that we did not waive any error that we believe that Judge Bush committed. We don't think, however, that an occurrence has been stated, and on that point I would refer to the Society of Jesus case. That contains and also the Westfield Bank case. Both of those cases, the Westfield case was decided by the Second Circuit, were confronted with cases where the party who was claiming that they were not within the particular exclusion actually was alleged to have been aware that sexual abuse was occurring and took no steps and, in fact, facilitated the sexual abuse. In both of those cases, the court concluded that that meant that the injuries that were subsequently sued for were expected or intended and therefore not an occurrence. Any additional questions? No, sir. All right. Thank you, Mr. Chacon. Thank you, Your Honor. The court would like to thank both counsels for spirited arguments. The matter will be taken under advisement, and an opinion will be rendered in due course. Thank you. All rise.